1  PHILIP M. MILLER (SBN 87877)
   SALTZMAN & JOHNSON LAW CORPORATION
2  120 Howard Street, Suite 520
   San Francisco, CA 94105
3  (415) 882-7900
   (415) 882-9287 – Facsimile
4  pmiller@sjlawcorp.com

5  Attorneys for Defendant

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  (SAN FRANCISCO DIVISION)

11

12  PACIFIC MARINE MAINTENANCE CO.,        Case No.:   C 07-4584 MMC

13            Plaintiff,                   NOTICE OF MOTION AND MOTION OF
                                           DEFENDANT AUTOMOTIVE
14  vs.                                    INDUSTRIES PENSION PLAN TO
                                           DISMISS (Fed. R. Civ. P. 12(b)(6))
15  AUTOMOTIVE INDUSTRIES PENSION
    PLAN,                                  Date:  December 7, 2007
16                                         Time:  9:00 a.m.
              Defendant.                   Court room:  7, 19th Floor
17                                         Judge:  Hon. Maxine M. Chesney

18

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

P:\CLIENTS\AUTPF\CASES\PMMC\PLEADINGS\Motion to Dismiss 2 102507.doc

1

## TABLE OF CONTENTS

2
I.    SUMMARY OF ARGUMENT ............................................................................. 1

3
II.   STATEMENT OF FACTS................................................................................... 2

4
III.  GENERAL LEGAL STANDARDS .................................................................. 3

5
      A.    Standards for Motion to Dismiss..............................................................3

6
      B.    General Standards for Injunctive Relief ..................................................3

7
IV.   PLAINTIFF HAS FAILED TO STATE A COGNIZABLE CLAIM TO ENJOIN THE
      PLAN FROM COLLECTING STATUTORILY REQUIRED INTERIM INSTALLMENT
8
      WITHDRAWAL LIABILITY PAYMENTS PENDING STATUTORILY REQUIRED
      ARBITRATION (Fed. R. Civ. P. 12(b)(6)) .............................................................. 4
9
      A.    Applicable ERISA Provisions ..................................................................4

10
      B.    The Court Should Hold that, as a Matter of Law, There is no Exception to the
            Requirement that an Employer Make Interim Withdrawal Liability Payments While
11
            Exhausting the Required Arbitration Procedure..........................................6

12
      C.    Even if the Court Were to Recognize a Narrow Exception to Interim Withdrawal
            Liability Payments, the Exception Should be Limited to Cases of Non-Colorable
13
            Claims of a Plan........................................................................................8

14
      D.    Plaintiff's Own Pleadings Establish that the Plan Has a Colorable Claim of
            Withdrawal Liability...............................................................................10
15

16    E.    Even if Court Holds that Plaintiff Has Adequately Alleged a Non-Colorable Claim,
            Plaintiff Has Not Alleged Irreparable Harm Sufficient to Justify Injunctive Relief
            from Interim Withdrawal Liability Payments .............................................13
17
V.    THE TRUST IS ENTITLED TO REIMBURSEMENT OF ITS REASONABLE
18
      ATTORNEYS' FEES AND COSTS ................................................................ 14

19
VI.   CONCLUSION .............................................................................................. 15

20

21

22

23

24

25

26

27

28

P:\CLIENTS\AUTPF\CASES\PMMC\PLEADINGS\Motion to Dismiss 102507.doc

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

Balastreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990)................................... 3

4

Board of Trustees of the Western Conference, Etc. v. Lads Trucking, 777 F.2d 1371, 1374 (9th

5
    Cir. 1985) ......................................................................................................................................... 6

6

Board of Trustees v. H.F. Johnson, 830 F.2d 1009, 1013 (9th Cir. 1987)........................................ 6

7

Board of Trustees, Sheet Metal, Etc. v. Courtad Construction Systems, 206 WL 2038526 at 6
    (E.D. Va. 2006)............................................................................................................................... 14

8

Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996)................................................... 3

9

California Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Circ. 1985).................. 3

10

Central States Pension Fund v. Wintz Properties, 155 F.3d 868, 875-76 (7th Cir. 1998) ............... 7

11

Concrete Pipe and Products of California v. Construction Laborers Pension Trust, Etc., 508 U.S.

12
    602, 607-609, 113 S. Ct. 2264, 2271-72 (1993) ............................................................................ 4

13

Connors v. Brady-Cline Coal, 668 F.Supp. 5, 8-9 (D.C.D.C. 1987).................................................. 7

14

Connors v. Vick, 1992 Vol. 200853 (S.D. W. Va. 1992) ................................................................. 12

15

County of Alameda v. Weinberger 520 F.2d 344, 349 (9th Cir. 1975) ............................................. 3

16

Cuyamaca Meats v. San Diego and Imperial Counties Butcher's, Etc., 827 F.2d 491, 500 (9th Cir.
    1987) ......................................................................................................................................... 11, 14

17

Debreceni v. Merchants Terminal Corporation, 889 F.2d 1, 3-9 (1st Cir. 1989)............................. 7

18

Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996) ......................................... 3

19

Galgay v. Beaverbrock Coal Co., 105 F.3d 137, 140 (3rd Cir. 1997) ......................................... 7, 9

20

Giroux Bros. Transportation v. New England Teamsters & Trucking Industry Pension Fund, 73

21
    F.3d 1, 4-5 (....................................................................................................................................... 14

22

Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1989) ........................ 2

23

I.A.M. National Pension Benefit Plan A v. Cooper Industries, 789 F.2d 21, 25 (D.C. Cir.), cert.

24
    denied, 479 U.S. 971, 107 S. Ct. 473 (1986) ............................................................................... 10

25

I.A.M. National Pension Fund v. Clinton Engines, 825 F.2d 415, 426 n.20 (D.C. Cir. 1987)......... 4

26

IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993) .............................. 10

27

IUF AFL-CIO Pension Fun v. Herrmann, 9 F.3d 1049, 1055-1058 (2d Cir. 1993) ...................... 12

28

Kaufman & Broad South Bay v. Unisys Corp., 822 F.Supp. 1468 (N.D. Ca 1993)........................ 2

ii

**NOTICE OF MOTION AND MOTION OF**
**DEFENDANT TO DISMISS**
**Case No.: C 07-4584 MMC**

Midgett v. Tri-County Metropolitan Transportation District of Oregon, 254 F.2d 846, 850-851 (9th Cir. 2001)................................................................................................................. 13

Miller v. Lehigh Coal and Navigation, 2004 WL 178597 (M.D. Pa. 2004) .................................. 12

Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 375, 100 S. Ct. 1723, 1733 (1980).................................................................................................................................. 4

Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 723 n.2, 104 S. Ct. 2709, 2714 n.2 (1984).................................................................................................................. 4, 5

Robbins v. McNicholas Transportation, 819 F.2d 682, 685 (7th Cir. 1987) ................................... 7

Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).............................. 3

San Diego Comm. Against Registration and the Draft v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)........................................................ 3

Santa Fe Pacific v. Central States Pension Fund, 22 F.3d 725 (7th Cir. 1994)............................. 12

Siaperas v. Montana State Compensation Insurance Fund, 480 F.3d 1001, 1003 (9th Cir. 2007) ... 3

Supervalu v. Board of Trustees of the Southwestern Pennsylvania, Etc., ____ F.3d ____, 2007 U.S. App. Lexis 21091 (3rd Cir. 2007)...................................................................... 11

Trustees of the Amalgamated Insurance Fund v. Geltman Industries, 784 F.2d 926 (9th Cir.), cert. denied, 479 U.S. 822, 107 S. Ct. 90 (1986) ..................................................... 6

Trustees of the Chicago Truck Drivers, Etc. v. Central Transport, 935 F.2d 114, 118 (7th Cir. 1991) ................................................................................................................ 7, 8, 9, 10

Trustees of the Chicago Truck Drivers, Etc. v. Rentar Industries, 951 F.2d 152, 155 (7th Cir. 1991) ............................................................................................................................ 8

Trustees of the Plumbers, Etc. v. Mar-Len, 30 F.3d 621, 626 (5th Cir. 1994) ...................... 8, 9, 10

Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)............................................................ 3

William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975); .................................................................................................................................. 3

Statutes

Fed. Civ. R. Proc. 12(b)(6)............................................................................................................. 2

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 1

Employee Retirement Income Security Act (ERISA)/U.S. Code

ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1)................................................................................ 6

ERISA § 4203(a), 29 U.S.C. § 1383(a)......................................................................................... 13

iii

**NOTICE OF MOTION AND MOTION OF**
**DEFENDANT TO DISMISS**
**Case No.: C 07-4584 MMC**

ERISA § 4203, 29 U.S.C. § 1383 ................................................................................. 5

ERISA § 4204, 29 U.S.C. § 1384 ............................................................................... 12

ERISA § 4212(c) ......................................................................................................... 12

ERISA § 4212(c), 29 U.S.C. § 1392(c) ............................................................. 2, 6, 11

ERISA § 4218(1), 29 U.S.C. § 1398(1) ..................................................................... 12

ERISA § 4219(a)(2); 29 U.S.C. § 1399(a)(2) .............................................................. 5

ERISA § 4219(b)(1), 29 U.S.C. § 1399(b)(1) .............................................................. 5

ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A) .................................................... 2

ERISA § 4219(b)(2)(B), 29 U.S.C. § 1399(b)(2)(B) .................................................... 2

ERISA § 4219(c)(1), 29 U.S.C. § 1399(c)(1) .............................................................. 5

ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2) .............................................................. 5

ERISA § 4221(a)(1) .................................................................................................... 11

ERISA § 4221(a), 29 U.S.C. § 1401(a) ....................................................................... 5

ERISA § 4221(d), 29 U.S.C. § 1401(d) ............................................................. 6, 11, 13

ERISA § 4301(b), 29 U.S.C. § 1451(b) ....................................................................... 6

ERISA § 4301(e), 29 U.S.C. § 1451(e) ............................................................... 14, 16

ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145 ............................. 6

Other Authorities

29 C.F.R. § 2644.2 (1988) ........................................................................................... 6

W. Schwarzer, A. Wallace Tashima, J. Wagstaffe, Federal Civil Procedure Before Trial, ¶ 13:77-
    13:79 (The Rutter Group, 2007) .......................................................................... 4

P:\CLIENTS\AUTPF\CASES\PMMC\PLEADINGS\Motion to Dismiss 102507.doc

**TO:    PLAINTIFF PACIFIC MARINE MAINTENANCE CO. AND ITS ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT, on December 7, 2007, at 9:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled Court located in Courtroom 7, 19th Floor, at 450 Golden Gate Avenue, San Francisco, California, the Court shall conduct a hearing on the motion of Defendant Automotive Industries Pension Plan to dismiss the Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), and for reimbursement of reasonable attorneys' fees and costs.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and all pleadings and papers on file in this action.

**I.    SUMMARY OF ARGUMENT**

Plaintiff Pacific Marine Maintenance Company ("PMMC") cannot state a claim to enjoin Defendant Automotive Industries Pension Plan ("Plan") from collecting statutorily mandated interim installment payments while the Plan completes its statutorily mandated administrative review of the appeal of Plaintiff of an assessment of withdrawal liability and while arbitration of the dispute, if needed, occurs. In the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), which amended ERISA to create provisions for withdrawal liability, Congress was so concerned about the financial survival of multiemployer pension plans, it expressly required that while an employer is utilizing the prescribed dispute resolution mechanism, arbitration, to challenge an assessment of withdrawal liability, it must begin making its statutorily scheduled installment payments. The intent of Congress was that at least some of the stake in the dispute be kept in the hands of the most frequently financially stable party, the pension plan, to be sure that it is available if the plan prevails in the dispute.

The particular dispute in this action, as described in the Complaint and its attachments, is within the class of disputes to which Congress directed this procedural scheme apply. As a matter of law, Plaintiff cannot state facts entitling it to an injunction upsetting the legislative scheme. The courts have held that bare allegations of irreparable financial harm are not a basis to alter the statutory scheme. Therefore, the Court should dismiss the Complaint with prejudice.

## II.  STATEMENT OF FACTS

Material submitted with a complaint may be considered as part of the complaint for purposes of a motion to dismiss under Fed. Civ. R. Proc. 12(b)(6).  *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989); *Kaufman & Broad South Bay v. Unisys Corp.*, 822 F.Supp. 1468 (N.D. Ca 1993).

In January 2005 Plaintiff PMMC was notified that its client at the Port of Oakland, Maersk, was terminating the contract between the parties effective March 31, 2005.  Complaint, ¶ 7-8; Exhibit A to Complaint at 2 (letter from Ethan Lipsig dated August 17, 2007 at 2).  After receiving that notice, but before contributions to Defendant Automotive Industries Pension Plan ("Plan") ceased, PMMC acquired certain assets of another company.  As a result of the asset purchase, Plaintiff contributed to the Plan on behalf of seven newly-acquired employees after its original contract ceased.  After the contract with Maersk terminated, the union which represented the former PMMC employees filed a charge with the NLRB alleging that the entity to whom the contract was transferred, "PCMC," and PMMC were a "single employer."  Complaint, ¶ 9. Exhibit A to Complaint at 1-3 (letter from Ethan Lipsig dated August 17, 2007).

The Plan determined that in 2004 Plaintiff had contributed to the Plan pension contributions on behalf of its employees in the sum $353,500 (Exhibit A to Complaint at 18, "Calculation of Withdrawal Liability Assessment").  In May 2007 Plaintiff contributed to the Plan only $6,636.00 for that month on behalf of five employees (Exhibit A to Complaint at 22-23).

The Plan assessed withdrawal liability in April 2007.  On August 17, 2007, Plaintiff made a formal request for review of its assessment, under the procedure required by ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A).  In the request for review Plaintiff argued that the asset purchase in question was not a transaction to "evade or avoid withdrawal liability," for purposes of ERISA § 4212(c), 29 U.S.C. § 1392(c) (Exhibit A to Complaint at 3-8).

Nineteen days later, on September 5, 2007, before the Plan had responded to the request for review pursuant to ERISA § 4219(b)(2)(B), 29 U.S.C. § 1399(b)(2)(B), Plaintiff applied for a temporary restraining order and filed the Complaint in this action.

///

## III. GENERAL LEGAL STANDARDS

### A.  Standards for Motion to Dismiss

A motion to dismiss for failure to state a claim is proper where a claim lacks a cognizable legal theory or the complaint does not allege sufficient facts under a cognizable legal theory. *Siaperas v. Montana State Compensation Insurance Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007); *Balastreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

### B.   General Standards for Injunctive Relief

In the Ninth Circuit the "basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  To establish entitlement to a preliminary injunction, a moving party must demonstrate either:

> 1.    A combination of probable success on the merits and the possibility of irreparable harm, or
>
> 2.    That there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor.

*Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987); *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Circ. 1985); *see also William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975); *County of Alameda v. Weinberger* 520 F.2d 344, 349 (9th Cir. 1975).  The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness."  *Rodeo Collection*, 812 F.2d at 1217 (quoting *San Diego Comm. Against Registration and the Draft v. Governing Bd. of Grossmont Union High Sch. Dist.*, 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).

///

1      There are actions for injunctive relief which are disfavored, including actions which upset

2   the status quo.  In such cases, the requirement for injunctive relief should be "more strictly

3   scrutinized."  W. Schwarzer, A. Wallace Tashima, J. Wagstaffe, <u>Federal Civil Procedure Before</u>

4   <u>Trial</u>, ¶ 13:77-13:79 (The Rutter Group, 2007).

5   **IV.  PLAINTIFF HAS FAILED TO STATE A COGNIZABLE CLAIM TO ENJOIN THE
    PLAN FROM COLLECTING STATUTORILY REQUIRED INTERIM**

6   **INSTALLMENT WITHDRAWAL LIABILITY PAYMENTS PENDING**

7   **STATUTORILY REQUIRED ARBITRATION (Fed. R. Civ. P. 12(b)(6))**

8   **A.   Applicable ERISA Provisions**

9      The Employee Retirement Income Security Act was enacted in 1974 to ensure that pension

10  benefits promised to employees would be received.  *Nachman Corp. v. Pension Benefit Guaranty*

11  *Corp.*, 446 U.S. 359, 375, 100 S. Ct. 1723, 1733 (1980).  After its passage, Congress identified a

12  serious problem in the operation of the statute in the context of multiemployer plans.   When

13  employers stopped contributing to a plan it created funding pressure on the remaining, reduced

14  pool of contributing employers left with the unfunded liabilities of departed employers.  The rising

15  costs caused further employer withdrawals, creating a vicious downward spiral, threatening the

16  solvency of pension plans.  *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717,

17  723 n.2, 104 S. Ct. 2709, 2714 n.2 (1984).  The threat of significant employer withdrawals also

18  jeopardized the solvency of the Pension Benefit Guaranty Corporation ("PBGC"), created by

19  Congress to partially insure a portion of the benefits in the event of a pension plan termination

20  without sufficient assets to cover promised benefits.  *Id.*, 467 U.S. at 721, 104 S. Ct. at 2713.

21     In addition, Congress was dissatisfied with then-existing collection procedures available to

22  pension plans seeking money judgments against contributing employers.  *I.A.M. National Pension*

23  *Fund v. Clinton Engines*, 825 F.2d 415, 426 n.20 (D.C. Cir. 1987).  The financial risks to

24  multiemployer pension plans and to the PBGC were unacceptable to Congress.  *Concrete Pipe and*

25  *Products of California v. Construction Laborers Pension Trust, Etc.*, 508 U.S. 602, 607-609, 113

26  S. Ct. 2264, 2271-72 (1993).   In response, Congress amended ERISA by enacting the

27  Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), adding a new Title IV to

28  ERISA, 29 U.S.C. §§ 1381-1461.  The MPPAA requires employers who incur a complete or

4

**NOTICE OF MOTION AND MOTION OF
DEFENDANT TO DISMISS**
**Case No.: C 07-4584 MMC**

1    partial withdrawal from a multiemployer pension plan which is not adequately funded to pay to

2    the plan a share of the unfunded, vested benefits. *R.A. Gray*, 467 U.S. at 725, 104 S. Ct. at 2715.

3          ERISA § 4203, 29 U.S.C. § 1383, provides that "[a]n employer completely withdraws

4    from a multiemployer plan when it (1) permanently ceases to have an obligation to contribute

5    under the plan, or (2) permanently ceases all covered operations under the plan." Once a plan

6    determines that a withdrawal has occurred it is required to notify the employer of the amount of

7    the liability and of the statutorily required schedule of payments. ERISA § 4219(b)(1), 29 U.S.C.

8    § 1399(b)(1). The assessed employer is entitled to request review of the plan's determination.

9    ERISA § 4219(a)(2); 29 U.S.C. § 1399(a)(2). If the employer is dissatisfied with the

10   determination by the Plan upon review, or if it has received no response to its request for review

11   after 120 days, it may initiate arbitration proceedings. ERISA § 4221(a), 29 U.S.C. § 1401(a).

12   The schedule of payments allows an employer to pay withdrawal liability in installments over an

13   amortization period not to exceed twenty years, determined by a statutory formula which generally

14   results in payments that approximate the average periodic contribution by the employer in years

15   preceding the withdrawal when it was operating at full force. *See* ERISA § 4219(c)(1), 29 U.S.C.

16   § 1399(c)(1).

17         The statute also states plainly when employer installment payments are to begin:

18   Withdrawal liability shall be payable in accordance with the schedule set forth by
     the plan sponsor under subsection (b)(1) beginning no later than 60 days after the
19   date of the demand notwithstanding any request for review or appeal of
     determinations of the amount of such liability or of the schedule.
20

21   ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2).

22         "Disputes between an employer and a plan over a determination of withdrawal liability

23   made under ERISA sections 4201 through 4219 shall be resolved through arbitration." ERISA §

24   4221(a), 29 U.S.C. § 1401(a). In the provision critical to this motion, ERISA mandates:

25   <u>Payment shall be made by an employer in accordance with the determinations
     made under this part until the arbitrator issues a final decision with respect to the</u>
26   <u>determination submitted for arbitration</u>, with any necessary adjustments in
     subsequent payment for overpayments or underpayments arising out of the
27   decision of the arbitrator with respect to determination.

28
                                                                                    5
                                                          **NOTICE OF MOTION AND MOTION OF**
                                                              **DEFENDANT TO DISMISS**

1   ERISA § 4221(d), 29 U.S.C. § 1401(d) (emphasis added).   If the employer prevails in part or

2   whole, it is repaid in a lump sum with interest.  *See* 29 C.F.R. § 2644.2 (1988).

3       Congress was so concerned that these interim installment payments be timely made that it

4   provided that a failure is treated like a delinquent employee benefit contribution.  As a result, in an

5   action to collect a delinquent withdrawal liability payment, the full array of remedies available in

6   an action for delinquent contributions is made available:  interest, liquidated damages, attorneys'

7   fees and other appropriate equitable relief.  See ERISA § 4301(b), 29 U.S.C. § 1451(b) and

8   ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145.

9       Congress added provisions to ensure that certain forms of corporate planning did not serve

10   to circumvent Congressional intent.  For example, ERISA defines the "employer" responsible for

11   withdrawal liability to include all trades and businesses under common control.   ERISA §

12   4001(b)(1), 29 U.S.C. § 1301(b)(1); *Board of Trustees v. H.F. Johnson*, 830 F.2d 1009, 1013 (9th

13   Cir. 1987).

14       Further evidence of the Congressional intent to ensure efficient recovery of withdrawal

15   liability is in ERISA § 4212, which states, "If a principal purpose of any transaction is to evade or

16   avoid liability under this part, this part shall be applied (and liability shall be determined and

17   collected) without regard to such transaction."  ERISA § 4212(c), 29 U.S.C. § 1392(c).

18   **B.   The Court Should Hold that, as a Matter of Law, There is no Exception to the
           Requirement that an Employer Make Interim Withdrawal Liability Payments
19         While Exhausting the Required Arbitration Procedure**

20       In *Trustees of the Amalgamated Insurance Fund v. Geltman Industries*, 784 F.2d 926 (9th

21   Cir.), *cert. denied*, 479 U.S. 822, 107 S. Ct. 90 (1986), an employer which had been assessed

22   withdrawal liability, contended that it was not delinquent in its withdrawal liability installment

23   payments until there was a final decision by the arbitrator.   The Ninth Circuit rejected the

24   contention and held that the employer was delinquent for failing to make the interim payments.

25   *Id.* at 932.  *See also Board of Trustees of the Western Conference, Etc. v. Lads Trucking*, 777 F.2d

26   1371, 1374 (9th Cir. 1985) (interim installment payments must be made "regardless of the

27   pendency of arbitration").  There is no Ninth Circuit holding of which the Plan is aware creating

28
                                                                                    6
                                                          **NOTICE OF MOTION AND MOTION OF
                                                                  DEFENDANT TO DISMISS**

1  any exception whatsoever to this requirement of interim installment payments of withdrawal

2  liability until after the statutorily required arbitration procedure has been initiated.

3      Other circuit courts are split on whether there is any exception to the requirement that

4  employers begin to make installment payments during the arbitration process.  The Third Circuit

5  declined to recognize an equitable exception in *Galgay v. Beaverbrock Coal Co.*, 105 F.3d 137,

6  140 (3rd Cir. 1997).  The Third Circuit explained:

7      If such companies are allowed to defer paying their debt to the pension funds, and
       go out of business while liability is being litigated, the pension funds will be
8      saddled with full liability for the unfunded pension benefits.  The interim payment
       provisions are designed to diminish this risk [citations omitted].
9

10     We believe that it would contort that law if we were to allow the undercapitalized
       or financially precarious companies that pose the very risk to pension funds that
11     MPPAA was designed to correct to defer payment because they pose that risk.

12  *Id.* at 141.

13     The First Circuit, presented the opportunity, chose not to decide whether there is an

14  equitable exception that interim installment payments be made during arbitration.  *See Debreceni*

15  *v. Merchants Terminal Corporation*, 889 F.2d 1, 3-9 (1st Cir. 1989).  The Court in *Debreceni*

16  affirmed a judgment that the employer violated the statute by failing to make interim payments,

17  holding that a failure of the plan to provide relevant information to the employer was no defense.

18  *Id.* at 7-8.  *See also Connors v. Brady-Cline Coal*, 668 F.Supp. 5, 8-9 (D.C.D.C. 1987) (under

19  MPPAA employer must make interim payments even if irreparable harm would result).

20     The Seventh Circuit initially recognized an equitable exception, allowing a court to enjoin

21  interim payments under narrow circumstances, but rethought the issue in later opinions.  *Compare*

22  *Robbins v. McNicholas Transportation*, 819 F.2d 682, 685 (7th Cir. 1987) *with Trustees of the*

23  *Chicago Truck Drivers, Etc. v. Central Transport*, 935 F.2d 114, 118 (7th Cir. 1991) (courts have

24  no general equitable power to excuse interim payments); *Central States Pension Fund v. Wintz*

25  *Properties*, 155 F.3d 868, 875-76 (7th Cir. 1998) ("Congress decided that interim payments were

26  mandatory-no excuses-because the stakes are safer in the interim if they are held by the Fund").

27     The Fifth Circuit adopted the holding in *McNicholas*, allowing a narrow corridor of

28  discretion to courts for the case of withdrawal liability claim by a pension plan which is "frivolous

1  or not colorable." *Trustees of the Plumbers, Etc. v. Mar-Len*, 30 F.3d 621, 626 (5th Cir. 1994).

2  Even the Fifth Circuit stated, however, that the "congressional intent that the pension fund be the

3  stakeholder during disputes" and risk financially troubled companies becoming judgment proof

4  compels that the court's discretion not extend beyond such frivolous or non-colorable claims. *Id.*

5        If an exception to the requirement of interim payments is recognized by this Court, it will

6  be easy for an employer to frustrate legislative intent to have pension plan hold the withdrawal

7  liability stake by merely alleging that the plan's claim is non-colorable and that the employer

8  would suffer financial harm. The risk of eventual uncollectibility of the employer would increase

9  as time passes during the arbitration process. For this reason, the Court should hold that there is

10  no exception excusing interim withdrawal liability payments and dismiss the Complaint with

11  prejudice for failure to state a cognizable claim.

12  **C. Even if the Court Were to Recognize a Narrow Exception to Interim Withdrawal**
    **Liability Payments, the Exception Should be Limited to Cases of Non-Colorable**
13      **Claims of a Plan**

14        Even the courts which have entertained an exception to withdrawal liability interim

15  payments have emphasized that the exception is extremely narrow, and have not found the

16  situation before it one in which the exception applies. The Seventh Circuit has stated "if the

17  fund's claim is frivolous – if the arbitrator is almost certain to rule for the employer – then the plan

18  is engaged in a ploy that a court may defeat....Having assured itself that the plan's claim is

19  legitimate, however, the court should order the making of interim payments and leave the rest to

20  the arbitrator." *Central Transport*, 935 F.2d at 119 (7th Cir. 1991) (affirming judgment that

21  entities the plan claimed to be under common control with withdrawal employer must pay

22  withdrawal liability interim payments where pension plan had "colorable claim"). The Seventh

23  Circuit reaffirmed that rule soon thereafter, holding that "irreparable harm becomes important only

24  if the employer makes an affirmative showing that the pension fund lacks a colorable claim."

25  *Trustees of the Chicago Truck Drivers, Etc. v. Rentar Industries*, 951 F.2d 152, 155 (7th Cir.

26  1991).

27  ///

28

1    The Fifth Circuit has said:

2       [A] reviewing court merely determines whether the pension plan's claim is
        nonfrivolous and colorable. If the claim for withdrawal liability is colorable, the
3       employer must make interim payments while it contests the underlying
        liability....This limited measure of discretion protects employers from frivolous
4       claims, while at the same time giving respect to congressional intent that the
        pension fund be the stakeholder during disputes over withdrawal liability.
5

6    *Mar-Len*, 30 F.3d at 626. *See also Galgay*, 105 F.3d at 140 ("a showing of irreparable harm to the

7    employer is alone insufficient to warrant equitable relief form interim payment liability").

8       Seventh Circuit has explained why an exception based on financial concern for the

9    withdrawn employer is inconsistent with Congress' intent to promote the recovery of withdrawal

10   liability:

11      Many of the firms are small and thinly capitalized. During the time consumed by
        the arbitration and any proceedings to review or enforce the award, some will go
12      out of business. The employers most likely to feel the pinch of interim payments
        are those skating closest to the edge, posing the greatest risk to the plans if
13      payment is deferred. Other employers, not at risk of insolvency, may distribute
14      assets during the interim, making collection difficult even if the pension plan
        prevails. In either case, the trust is left with the obligation to the workers without a
15      corresponding source of funds. Much of pension law is designed to alleviate this
        risk [citation omitted]. Although the trust bears substantial risk if the employer
16      holds the stakes pending final outcome, the employer faces no corresponding risk
17      if the fund holds the stakes. Pension trusts are solvent, diversified, regulated
        institutions.
18

19   *Central Transport*, 935 F.2d at 118-119 (7th Cir. 1991); *Accord Galgay* 105 F.3d 140-141 (3rd

20   Cir. 1997). The court concluded that the district court should not "pre-try the case or excuse

21   interim payments by those employers whose precarious financial condition creates the greatest risk

22   to a pension plan" whenever the plan has even a "colorable claim." *Id.* at 119.

23      The Fifth Circuit expressed the rationale as follows:

24      [T]he risk is greater for the pension plan. As other circuits have noted,
        withdrawing employers are often financially troubled companies. Deferring
25      interim payments may ultimately leave a pension fund with an obligation to the
        worker without a corresponding source of funds. The "pay now, dispute later"
26      aspect of the MPPAA was designed to reduce the risk of nonpayment by a
        withdrawing employer. Contributing employers, on the other hand, have relatively
27      little risk of losing the interim payments. Pension funds are highly regulated
        institutions, and only in the most uncommon of cases will a fund be unable to
28      repay interim withdrawal liability payments if so required.

9

1  *Mar-Len*, 30 F.3d at 626.

2      The District of Columbia Circuit also rejected the allegation of irreparable harm as a basis

3  to interfere with the legislative scheme, stating, "Congress showed no comparable solicitude for

4  the cash flow problems of employers." *I.A.M. National Pension Benefit Plan A v. Cooper*

5  *Industries*, 789 F.2d 21, 25 (D.C. Cir.), *cert. denied*, 479 U.S. 971, 107 S. Ct. 473 (1986).

6      Another reason disfavoring preemptive lawsuits to prevent the interim installment

7  payments mandated by Congress is that it undermines Congress' goal of judicial economy:

8      Efforts to alleviate the "harshness" of the MPPAA by examining the employer's
       probability of success before the arbitrator frustrate achievement of that objective.
9      Instead of one speedy decision, there will be three slow ones. First the employer
       will resist making interim payments; the district judge will have to examine the
10     merits of the plan's claim to determine the employer's probability of success
       before the arbitrator. Next the arbitrator will take evidence and decide. Finally the
11     loser will return to court and ask the judge to set aside the arbitrator's decision.

12
   *Central Transport*, 935 F.2d at 119 (7th Cir. 1991).
13
14     Therefore if the Court reviews the pleadings for any exception at all to the plain statutory

15  requirement of interim installment payments of withdrawal liability, it should limit itself to a

16  preliminary determination whether the pleadings reveal a colorable claim of the Plan to

17  withdrawal liability. If the pleadings suggest that the Plan has a colorable claim the Court should

18  dismiss Plaintiff's effort to enjoin interim payments with prejudice.

19  **D. Plaintiff's Own Pleadings Establish that the Plan Has a Colorable Claim of
       Withdrawal Liability**

20     A claim is not colorable if it is:

21     So insubstantial, implausible, or otherwise devoid of merit as not to involve a
22     federal controversy. This is a high burden for the defendants to meet.

23  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993).    Plaintiff's

24  Complaint and its attachments reveal a colorable controversy.

25     The Complaint and its attachments establish that Plaintiff faced an impending complete

26  withdrawal and withdrawal liability as a result of the loss of its work under a collective bargaining

27  agreement.    Just before the withdrawal occurred, Plaintiff purchased a business operation

28  (Complaint, Exhibit A, p.2) and continued to contribute to the Plan, but in a much smaller amount

10

**NOTICE OF MOTION AND MOTION OF
DEFENDANT TO DISMISS**
Case No.: C 07-4584 MMC

1  (Complaint, Exhibit A, p. 18, 22-23).  The Plan assessed withdrawal liability based upon ERISA §

2  4212(c), 29 U.S.C. § 1392(c), that the last-minute purchase was an action to evade or avoid

3  withdrawal liability.  The Plan determination under ERISA § 4212(c) falls squarely within the

4  requirement in ERISA § 4221(a)(1) that "[a]ny dispute…concerning a determination made under

5  sections 4201 through 4219 shall be resolved through arbitration."  It also falls squarely within the

6  requirement that [p]ayments shall be made under this part until the arbitration issues a final

7  decision…."  ERISA § 4221(d), 29 U.S.C. § 1401(d).

8      The claim is colorable.  The courts have not hesitated to order a transaction disregarded

9  under similar or analogous circumstances.  In *Supervalu v. Board of Trustees of the Southwestern*

10 *Pennsylvania, Etc.*, ____ F.3d ____, 2007 U.S. App. Lexis 21091 (3rd Cir. 2007), an employer

11 initially decided to close a facility later in the year but subsequently renegotiated its bargaining

12 agreement with the union to have the cessation of the obligation to contribute occur earlier than

13 the closure date and just days before a new plan year would begin.  The timing made the

14 difference as to whether the withdrawal would result in withdrawal liability.  The plan assessed

15 withdrawal liability based on ERISA § 4212(c), just as in this case, on the theory that a principal

16 purpose of the transaction was to evade or avoid withdrawal liability.  The court of appeals

17 reversed a trial court judgment in favor of the employer.  The Third Circuit held, "By

18 renegotiating the CBAs in order to withdraw from the Fund, *Supervalu* engaged in exactly the

19 type of conduct Congress was trying to prevent. ____ F.3d at _____, 2007 U.S. App. Lexis at 6.

20 The court explained, "As discussed above, § 4212(c) is unambiguous.  The text in no way suggests

21 that it only applies to sham or fraudulent transactions." ____ F.3d at ____, 2007 U.S. App. Lexis at

22 7.  The Third Circuit reversed a district court holding that the Plan improperly disregarded the

23 transaction under ERISA § 4212(c) and remanded with directions to grant judgment in favor of the

24 plan.[1]

25

26 [1] The Third Circuit in *Supervalu* distinguished the Ninth Circuit decision in *Cuyamaca Meats v.
   San Diego & Imperial Counties Butchers', Etc.*, 827 F.2d 491 (9th Cir. 1987), *cert. denied*, 485

27 U.S. 1008 (1988).  In *Cuyamaca* an employer in arms length negotiations with a union bargained
   to impasse and then implemented a proposal under which contributions to a pension plan would

28 cease on a date a few months hence and selected by the employer to fall after the upcoming end of

11

**NOTICE OF MOTION AND MOTION OF**
**DEFENDANT TO DISMISS**

1    In *Santa Fe Pacific v. Central States Pension Fund*, 22 F.3d 725 (7th Cir. 1994) the stock

2 of a subsidiary, rather than its assets, were sold. A sale of stock is not, in general, a transaction

3 which triggers withdrawal liability, but a sale of assets can do so unless several requirements are

4 met. *Compare* ERISA § 4218(1), 29 U.S.C. § 1398(1) *with* ERISA § 4204, 29 U.S.C. § 1384.

5 The Seventh Circuit reversed a district court judgment that the transaction was not to be

6 disregarded under ERISA § 4212(c). Despite testimony in the record of company officers to the

7 contrary, the Seventh Circuit determined that a principal purpose of the form of the transaction

8 was to avoid withdrawal liability. The court noted that the proper test is not whether the

9 transaction is a sham with no other purpose. The statutory test is "whether the avoidance of

10 withdrawal liability by the seller (not necessarily by the purchaser as well) is one of the principal

11 purposes of the transaction." 22 F.3d at 729.30.

12    In *Connors v. Vick*, 1992 Vol. 200853 (S.D. W. Va. 1992) an employer withdrew from a

13 plan and, after being assessed withdrawal liability, conveyed property he owned to his wife. The

14 court granted judgment to the plan on a claim that the conveyances should be disregarded under

15 ERISA § 4212(c). The court stated "The timing of the conveyances strongly suggest that the

16 purpose was to evade or avoid withdrawal liability." *Id. See also IUF AFL-CIO Pension Fun v.*

17 *Herrmann*, 9 F.3d 1049, 1055-1058 (2d Cir. 1993) (allegation that sale of assets rendering

18 corporation insolvent and unable to pay withdrawal liability states colorable claim under ERISA §

19 4112(c) that transaction had a primary purpose to evade or avoid withdrawal liability states a

20 "colorable claim"). In this case, the timing of the asset purchase by Plaintiff also suggests that one

21 of the principal purposes was to avoid withdrawal liability.

22    The facts in *Miller v. Lehigh Coal and Navigation*, 2004 WL 178597 (M.D. Pa. 2004) are

23 
_____

24 the plan year of the pension plan. The employer correctly anticipated that its withdrawal liability
would be less than if it withdrew before the end of the plan year. *Id.* at 494-495. The court in
*Supervalu* noted that delaying, as opposed to avoiding, a withdrawal to reduce, rather than avoid,

25 the liability might not undermine the goals of the MPPAA, but a complete avoidance of the
liability would. The present claim of the Plan is much more similar legally to the claims in

26 *Supervalu* than the one in *Cuyamaca*. As in *Supervalu* but not in *Cuyamaca*, Plaintiff PMMC in
this case attempted not merely to reduce withdrawal liability but to "avoid" it entirely. Like the

27 transaction in *Supervalu*, and unlike that in *Cuyamaca*, Plaintiff PMMC's transaction did not
merely postpone the withdrawal liability but, if honored, would evade it altogether.

28 

12

1  similar to those pleaded by Plaintiff in this case.  An employer ceased operations and its

2  contributions to a pension plan.  After the plan assessed withdrawal liability, the employer

3  resumed operations with many fewer employees and resumed its contributions to the plan at a

4  much lower level.  Even though a complete withdrawal requires a permanent cessation of the

5  obligation to contribute or permanent cessation of covered operations, ERISA § 4203(a), 29

6  U.S.C. § 1383(a), the plan deemed the renewed, diminished activity as a transaction to evade or

7  avoid withdrawal liability and assessed the liability.  The court deemed it be a colorable claim and

8  granted the plan's request for an injunction requiring interim payments.  *Id*. at 4.

9       As in these cases, the pleadings by Plaintiff reveal an impending complete withdrawal

10  from a pension plan and a last-minute transaction, timed to avoid that withdrawal.  Congress

11  anticipated the very classes of disputes at issue in this motion, those under ERISA § 4212(c), and

12  mandated that (1) disagreements first be arbitrated (ERISA § 4219(a)) and (2) interim installment

13  payments be made during the arbitration process (ERISA § 4221(d), 29 U.S.C. § 1401(d)).

14  Because the claim of the Plan presented is colorable, the Court should hold, as a matter of law,

15  that injunction relief is unavailable to Plaintiff and should dismiss the Complaint to enjoin interim

16  withdrawal liability payments with prejudice.

17  **E.  Even if Court Holds that Plaintiff Has Adequately Alleged a Non-Colorable Claim, Plaintiff Has Not Alleged Irreparable Harm Sufficient to Justify Injunctive Relief from Interim Withdrawal Liability Payments**

18

19       The Plan does not believe that the Court needs to reach the questions of irreparable harm

20  and the weighing of hardship in this motion because the legislative scheme does not permit an

21  injunction against collecting interim withdrawal liability payments or, alternatively, allows the

22  stating of a claim only if the pleadings reveal a non-colorable claim for withdrawal liability.  The

23  Plan notes, however, that Plaintiff has not alleged facts which, if true, would constitute cognizable

24  irreparable harm in a withdrawal liability matter.  To be entitled to injunctive relief, a plaintiff

25  must allege facts which, if true, would establish an immediate threat of substantial and irreparable

26  harm.  *Midgett v. Tri-County Metropolitan Transportation District of Oregon*, 254 F.2d 846, 850-

27  851 (9th Cir. 2001).  "The fact that adequate compensatory relief will ultimately be available in

28

13

1  the ordinary course weighs heavily against a claim of irreparable harm. *Sampson v. Murray*, 415

2  U.S. 61, 90, 94 S. Ct. 937, 953 (1974)."

3      In this case, Plaintiff merely alleges, "irreparable injury, including the inability to grow its

4  business as it must make these potentially business-damaging payments and risk having to curtail

5  its operations" (emphasis added).  Complaint, ¶ 14.  These pleadings, if true, would at best show

6  PMMC thinks it might be modestly damaged, not that it would be damaged immediately and in an

7  significant, irreparable way.  Even courts which have considered the issue of irreparable harm in

8  the context of excusing interim withdrawal liability payments have required more. *See Giroux*

9  *Bros. Transportation v. New England Teamsters & Trucking Industry Pension Fund*, 73 F.3d 1, 4-

10  5 (1st Cir. 1996) (contention by employer that meeting interim payments would require a partial

11  liquidation and employee layoffs inadequate; threat of imminent insolvency required); *Board of*

12  *Trustees, Sheet Metal, Etc. v. Courtad Construction Systems*, 206 WL 2038526 at 6 (E.D. Va.

13  2006) (allegation of general economic hardship insufficient).

14      This court found the allegations of irreparable harm inadequate in denying Plaintiffs'

15  request for a temporary restraining order in an Order dated September 5, 2007.  Therefore, even if

16  the Court reaches the question of irreparable harm, it should dismiss the Complaint for failure to

17  allege facts supporting the irreparable harm which could justify an order enjoining collection of

18  interim withdrawal liability payments.

19  **V.  THE  TRUST  IS  ENTITLED  TO  REIMBURSEMENT  OF  ITS  REASONABLE**
    **ATTORNEYS' FEES AND COSTS**

20

21      In a dispute over withdrawal liability "the court may award all or a portion of the costs and

22  expenses incurred in connection with such action, including reasonable attorney's fees, to the

23  prevailing party."  ERISA § 4301(e), 29 U.S.C. § 1451(e).  The factors considered are:  "(1) the

24  culpability or good faith of the opposing party; (2) the ability of opposing party to pay the award

25  fee; (3) the degree of deterrence which would result from an award of fees; (4) whether a number

26  of participants under an ERISA plan would benefit from an award of fees; and (5) the relative

27  merits of the parties positions." *Cuyamaca Meats v. San Diego and Imperial Counties Butcher's,*

28  *Etc.*, 827 F.2d 491, 500 (9th Cir. 1987).

1    Here, defendant should have known it was not entitled to injunctive relief from interim

2  withdrawal liability payments, given the statutory language and the host of decisions indicating

3  that it was unavailable in this case.  Its preemptive action without any prior notice whatsoever to

4  the Plan (see Order Denying Plaintiffs' Application for Temporary Restraining Order at 1),

5  suggests bad faith and abuse of process to avoid a deliberate review of the merits of the request for

6  injunctive relief.  The fees incurred at this stage of the litigation are modest so Plaintiff cannot

7  seriously claim an inability to pay.  An award of fees would deter assessed employers in this Plan

8  and other plans from filing similar unjustified preemptive actions.  The participants of the Plan

9  would benefit if the Plan is made whole in this case and would benefit if other withdrawing

10  employers in the Plan do not file unjustified actions against the Plan to enjoin interim payments.

11  Finally, given the strong legislative policy against excusing interim payments and the numerous

12  courts' decisions requiring them, Plaintiff's claim has very little merit.  Therefore, the Court

13  should order that Plaintiff reimburse the Plan for its reasonable attorneys' fees and costs,

14  according to proof.  The Plan requests an opportunity to submit an application, identifying the

15  amounts incurred.

16  ## VI.    CONCLUSION

17    The Court should hold that (1) an employer, such as Plaintiff, which is assessed

18  withdrawal liability under ERISA, cannot state a claim to enjoin the Plan from collecting interim

19  installments withdrawal liability payment required by ERISA, (2) even if such a claim were

20  available under the narrow circumstance of a noncolorable claim by a pension plan, the Complaint

21  and its attachments establish that the Plan has a noncolorable claim, and (3) the irreparable harm

22  alleged by Plaintiff is not adequate to justify an injunction against the Plan, preventing it from

23  demanding interim withdrawal liability payments.  The Court should hold that each of these bases

24  is independently sufficient to conclude that Plaintiff's action to enjoin interim withdrawal liability

25  payments has no chance of success on the merits.  Given the legislative policy to protect pension

26  plans, rather than employers assessed withdrawal liability, from the consequences of not holding

27  the monetary stake during arbitration of withdrawal liability disputes, the Court should hold that

28  the balance of hardships favor the Plan.  The Court should dismiss the action for injunctive relief

15

1  with prejudice.  The judgment with respect to the right to enjoin interim payments would not

2  preclude Plaintiff from seeking judicial review of any adverse decision on the merits in a statutory

3  arbitration, if one is needed.  The Court should order Plaintiff to reimburse the Plan for its

4  reasonable attorneys' fees and costs under ERISA § 4301(e), 29 U.S.C. § 1451(e) according to

5  proof.

6                                              Respectfully submitted,

7  Dated: October 25, 2007                     SALTZMAN & JOHNSON
                                               LAW CORPORATION
8

9                              By:    _Philip M Miller_____

10                                             Philip M. Miller
                                               Attorneys for Defendant
11                                             Automotive Industries Pension Plan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2    I, the undersigned, declare:

3        I am employed in the County of San Francisco, State of California.  I am over the age of

4    eighteen and not a party to this action.  My business address is 120 Howard Street, Suite 520, San

5    Francisco, California 94105.

6        On October 25, 2007, I served the following document on the parties to this action, in the

7    manner described below:

8        **NOTICE OF MOTION AND MOTION OF DEFENDANT AUTOMOTIVE**
    **INDUSTRIES PENSION PLAN TO DISMISS (Fed. R. Civ. P. 12(b)(6))**

9

10   <u>XX</u>    **MAIL,** being familiar with the practice of this office for the collection and the processing of correspondence for mailing with the United States Postal Service, and deposited in the United States Mail copies of the same to the business addresses set forth below, in a sealed

11   envelope fully prepared.

12   ___    **FACSIMILE** be causing said document to be transmitted by Facsimile machine to the number indicated after the address(es) set forth below.

13

14   ___    **UPS** for delivery the following business day by placing same for collection by UPS to the business addresses set forth below.

15   ___    **PERSONAL DELIVERY** by placing said document is a sealed envelope and causing it to be personally delivered to the address(es) set forth below.

16

17   *Addressed to:*

18   Robert P. Kristoff
Paul, Hastings, Janofsky & Walker LLP

19   55 Second Street, 24th Floor
San Francisco, CA 94105

20

21   Ethan Lipsig
Caroline Lee Elkin

22   Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street, 25th Floor

23   Los Angeles, CA 90071

24       I declare under penalty of perjury that the foregoing is true and correct and that this

25   declaration was executed on this 25th day of October, 2007 at San Francisco, California.

26

27   _____
    Julie Jellen

28              **NOTICE OF MOTION AND MOTION**
           **OF DEFENDANT TO DISMISS**
           Case No.:  C 07-4584 MMC

P:\CLIENTS\AUTPF\CASES\PMMC\PLEADINGS\Motion to Dismiss 102507.doc